1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11
12
13
14
15
16
17

DARCY J. MOORE,

              Plaintiff,

        v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

           Defendant.

Case No.  C05-5066FDB

REPORT AND
RECOMMENDATION

Noted for February 17, 2006

18
19
20
21

     This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed, and the undersigned now submits the following report and recommendation for consideration by the Honorable Franklin D. Burgess.

22

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

23
24
25

     The matter is now before the court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for judicial review of the Commissioner's final decision denying Plaintiff's application for social security  benefits.

26
27
28

     Plaintiff was born in 1984 and she was 20 years old at the time of the ALJ's decision. She attending special education classes in school.  She does not drive and she continues to live at home with her father, who helps her in many ways as well as coaches her for Special Olympics.  At that time of the hearing, she

was attending a culinary arts program in a vocational school as an adjunct to finishing high school.  She has no past relevant work experience (Tr. 63, 218-19).

Plaintiff filed an application for Title XVI benefits on September 23, 2002, with a protective filing date of July 22, 2002, alleging disability due to her learning disorder (Tr. 84).   The application was denied initially (Tr. 49-50) and on reconsideration (Tr. 37-39).  An administrative law judge (ALJ) held a hearing on April 23, 2004 (Tr. 213-41). On September 10, 2004, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform work with simple, repetitive structure and no more than two to three steps, and was not disabled within the meaning of the Social Security Act (Tr. 17-27).  Plaintiff requested administrative review, but the Appeals Council declined. (Tr. 6-8), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 422.210.

Plaintiff challenges the ALJ's finding that she is not disabled.  Plaintiff specifically argues the ALJ's residual functional capacity assessment is not supported by substantial evidence or free of legal error. Specifically, plaintiff alleges the following two errors: (1) the ALJ did not provide sufficient reasons for rejecting the State Agency's reviewing doctor's opinion; and (2) the ALJ did not adequately address the statements of Ms. Moore's teacher, Phoebe Martinson.  After careful consideration of the administrative record, the parties' memoranda, the undersigned finds the ALJ erred in his evaluation of the evidence and recommends that the Court REVERSE the Secretary's decision  with directions to the Commissioner to award plaintiff appropriate benefits.

<u>DISCUSSION</u>

This Court must uphold the Secretary's decision if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992); <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision.  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

**A.    THE ALJ DID NOT PROVIDE SUFFICIENT REASONS FOR REJECTING THE STATE AGENCY REVIEWING DOCTORS' OPINION**

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (1 1th Cir. 1982).  The Commissioner may not reject a medical opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

Here, the issue is whether the ALJ gave sufficient reasons for rejecting the opinion of William Lysak, Ph.D. and Bruce Eather, Ph.D., both State Agency reviewing psychologists.  The Commissioner's regulations provide that these opinions are significant and must be addressed by the ALJ. Social Security Ruling 96-6p, 20 C.F.R. § 416.927(f).   State Agency physicians are considered experts in Social Security disability evaluation. 20 C.F.R. § 416.927(f)(2)(i).

Dr. Lysak and Dr. Eather found that because of her borderline intellectual functioning; cognitive disorder, not otherwise specified; and learning disorder not otherwise specified; Ms. Moore had moderate limitations in her activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace (Tr. 196, 205).  Dr. Lysak and Dr. Eather further found that Ms. Moore had marked limitations in understanding and remembering and carrying out detailed instructions, and moderate limitations in the following areas:

- Performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances;

- Sustaining an ordinary routine without special supervision;

- Working in coordination with or proximity to others without being distracted by them;

- Making simple work-related decisions;

- Completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonably number and length of rest periods;

- Interacting appropriately with the general public;

• Getting along with coworkers or peers without distracting them or exhibiting behavioral extremes;

• Responding appropriately to changes in the work setting;

• Being aware of normal hazards and taking appropriate cautions;

• Traveling in unfamiliar places or using public transportation; and

• Setting realistic goals or making plans independently of others.

(Tr. 191-92).  Significantly, the vocational expert testified that this combination of moderate limitations would interfere with Ms. Moore's ability to sustain competitive work (Tr. 239).

In contrast to these limitations ascribed by the two doctors, the ALJ found that Ms. Moore had only mild to moderate difficulties rather than marked difficulties in her ability to understand, remember and carry out detailed instructions based on Ms. Moore's activities (Tr. 25), specifically, beading, crafts, drawing and extensive reading (Tr. 25). The ALJ found that the drawing and beading required, "detailed instructions and sequencing of events" (Tr. 24-25).

Ms. Moore does not deny that she draws, does beading, and reads, however, there is no support for the ALJ's determination that these activities require "detailed instructions and sequencing of events" and no indication that her ability to do these things is inconsistent with the State Agency psychologists' opinion that she had a marked limitation in her ability to understand, remember and carry out detailed tasks. Ms. Moore testified that she liked to draw when she was bored (Tr. 223), but again there is no indication that this drawing was equivalent to carrying out detailed instructions.  She also agreed at the hearing that she did some beading, but nothing about the time she spent at this activity, or the type and complexity of beading that she did (Tr. 223). Moreover, Ms. Moore's ability to draw and do beading does not show an advanced ability to carry out detailed instructions or to perform events in sequence as alleged by the ALJ, especially not without some testimony about their degree of complexity.

Other evidence of record shows that, as found by the State Agency psychologists, Ms. Moore has marked difficulty with detailed tasks. For example, special education records showed that she needs additional time to complete assignments and shorter assignments as needed (Tr. 144). In October 2002, School Psychologist Jim Grosso noted that Ms. Moore had problems paying attention when material was above her ability to understand (Tr. 98). He noted that she was capable if given tasks that were appropriate

for her understanding, but noted that she was "significantly below" her peers in terms of cognitive function (Tr. 98, emphasis in original). He noted that she could handle simple changes in routine, but took a period of adjustment to deal with more severe changes (Tr. 98).

In the more recent psychological evaluation with Carla Van Dam, Ph.D., Ms. Moore was unable to count backwards by threes and showed many gaps in her understanding of how things are done (Tr. 188). Ms. Moore's ability to do abstract reasoning also varied (Tr. 188). Ms. Moore's instructor, Phoebe Martinson, also noted difficulties which would interfere with Ms. Moore's ability to understand, remember and carry out detailed tasks. For example, Ms. Martinson noted that Ms. Moored needed more reminders and check backs than the average student and needed explicit instructions of what to do when she finished a task (Tr. 106, 108). In 2004, Ms. Martinson noted that Ms. Moore had done well in part because things were made comfortable for her through repetition and constancy (Tr. 132). Ms. Martinson started that Ms. Moore would need thorough instructions and support in learning job duties (Tr. 132). Ms. Moore's father's testimony also showed that she would have marked difficulty understanding, remembering and carrying out detailed tasks. He noted that she had to be redirected after every task and reminded of tasks at home (Tr. 230). When cooking, she sometimes over cooked things and sometimes undercooked things (Tr. 229).

The ALJ further rejected the State Agency psychologists' opinion when he found that Ms. Moore had "no difficulties" maintaining a schedule as evidenced by her many activities including participation in the Special Olympics, volunteering at the library, attending high school and culinary arts school and socializing (Def. Br. at 7, citing Tr. 25). As discussed above, the ALJ characterization of Ms. Moore's activities is misleading. The evidence shows that Ms. Moore is not age appropriate in her activities, and performs them only with assistance from her father and the special education system. For instance, Ms. Moore's father is a coach on her Special Olympics team. There is no evidence that she independently engages in this activity. In fact, he testified that she told him if left to her own devices, she would not follow through with this (Tr. 227).

A special educational program, giving plaintiff more attention and support, allows her to perform successfully in her culinary arts program. The record shows that she has additional time to complete assignments and the shorter assignments as needed (Tr. 144). Ms. Moore has been attending the culinary

arts program for over four years. She only attends this program for two and a half hours a day (Tr. 219). She testified that she had to be reminded to complete tasks (Tr. 219). She testified that the purpose of her culinary arts program was to become a chef, but that she really did not have a plan for after she graduated (Tr. 221). She was not sure she could do a full-time job (Tr. 222). She also testified that she did not know how to go out and look for a job (Tr. 222). Her teacher Ms. Martinson testified that Ms. Moore has had some successes in the program, but she does not quite keep up with her peers, needs more reminders to complete tasks than the average student, needs explicit instructions of what to do when she finishes a task, has slowed reaction time, does not answer questions when stressed, is snappy when being corrected, and receives more instruction and reminders than other students (Tr. 105-08). The vocational expert testified that if these issues were present in a work setting, he would be concerned about Ms. Moore's ability to perform competitive work (Tr. 238).

In sum, the ALJ's observation and reliance on the fact that Ms. Moore attends a culinary arts program is misplaced. Her activities in the program are more consistent with the reviewing psychologists' determination of limitation, particularly given the information about her success in that program from Ms.Martinson. Ms. Moore's participation in this program does not show that she has "no difficulties" maintaining a schedule, as argued by the Commissioner and the ALJ.

In regard to socializing, the ALJ found that she goes to the store and attends social events like dances and games (Tr. 24),and that she engages in the usual adolescent behavior with peers (Tr. 24). School psychologist Jim Grosso noted that he had seen Ms. Moore in the community at stores and at school attending social events, dances and games (Tr. 99). However, at the hearing, when the ALJ asked Ms. Moore if she did typical teen things like going to the movies or to the mall, she testified that she had done this only once (Tr. 224). Ms. Moore testified at the hearing that she stayed over at a friend's house "not very often" (Tr. 224). Her ability to engage in sporadic socializing is not inconsistent with the reviewing psychologists' opinions.

Although the ALJ felt that Ms. Moore's activities warranted rejecting the determinations of Dr. Lysak and Dr. Eather, the ALJ's representations of those activities are incorrect. Those psychologists reviewed the same evidence as the ALJ and determined that Ms. Moore was significantly more limited than found by the ALJ. As discussed above, the ALJ did not give specific and legitimate reasons for rejecting

the opinions of the State Agency reviewing physicians which establish that Ms. Moore is more limited than found by the ALJ.

**B.      THE ALJ DID NOT ADDRESS THE STATEMENTS OF MS. MOORE'S TEACHER, PHOEBE MARTINSON**

Plaintiff argues that the ALJ erred when he did not mention the probative evidence from her teacher Phoebe Martinson. The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ can reject the testimony of lay witnesses only if s/he gives reasons germane to each witness whose testimony s/he rejects. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Ms. Martinson is Ms. Moore's instructor at the New Market Culinary Arts program. She completed a Teacher Questionnaire on April 6, 2003 (Tr. 105-08) which describes Ms. Moore's performance at New Market, which was noted in the discussion above. Ms. Martinson also submitted a letter which further expanded on the limitations she described in the questionnaire.

The Commissioner argues the ALJ did not err when the ALJ failed to comment or assess the weight of the evidence from Ms. Martinson. Defendant further argues the ALJ did not err because Ms. Martinson's statements do not necessarily conflict with the limitations assessed by the ALJ in his RFC determination (Def. Br. at 8) and because neither of these statements establishes disability (Def. Br. at 9).

After carefully reviewing the record the court finds the ALJ's erred when he failed to consider all of Ms. Martinson's statements. As noted above, the ALJ's residual functional capacity finding that Ms. Moore could to simple, repetitive, structured work, requiring at most two to three steps (Tr. 27), is at odds with many of the statements and observations made by Ms. Martinson. This is well demonstrated by reference to the vocational expert's testimony when he was able to identify jobs that could be performed within that ALJ's RFC, but when asked to include the limitations observed by Ms. Martinson, the expert would preclude competitive work activity. (Tr. 238).

CONCLUSION

Based on the foregoing discussion, the court finds the ALJ erred in assessing plaintiff's application for disability benefits. The court further finds that there is no reasonable need for the matter to be remanded to the administration for further consideration. The vocational expert stated Ms.. Moore is

REPORT AND RECOMMENDATION
Page - 7

unable to work given the limitations provided by the State Agency physicians and Ms. Martinson. The Court should set aside and REVERSE the commissioner's decision and REMAND the case to the administration with directions to award appropriate disability benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **February 17, 2006**, as noted in the caption.

DATED this 24th  day of January, 2006.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge